UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| QUANTUM-MAC INTERNATIONAL, INC., and IMO S. OKWU, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WORLD BUSINESS LENDERS, LLC, and WBL SPE III, LLC, <br><br> Defendants. | CIVIL ACTION FILE NO. |

CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL

I. THE NATURE OF THE ACTION

1.

The plaintiffs are seeking relief from a "rent-a-bank" scheme being

perpetrated by non-bank actors. A rent-a-bank scheme occurs when a lender

"borrows" a federally regulated bank's preemption rights in order to

fraudulently defeat their borrower's state's usury protections. In this case, the

non-bank defendants, as *de-facto* lenders, extended a commercial loan to

plaintiff Quantum-Mac with a disguised annual interest rate of 88% — a rate

that is both criminally and civilly usurious under Georgia law. Quantum-Mac

has paid roughly $27,000 of the $50,000 principal, and will repay the balance. Under Georgia law the defendants must disgorge or disclaim the remaining $133,519 of accrued interest.

In addition, defendant WBL SPE III, LLC ("WBL") now threatens to conduct a non-judicial foreclosure sale of plaintiff Imo Okwu's personal residence. However, no note or guarantee signed by Okwu is collateralized by the Deed to Secure Debt whose power of sale WBL is exercising. Under Georgia law the defendants must terminate or rescind the non-judicial foreclosure sale scheduled for June 2, 2020.

Because of the pervasiveness of such unlawful conduct, a class action can and should be certified.

## II. THE HOME

2.

This action concerns the below-described parcel of real estate, which is the principal dwelling of plaintiff Imo Okwu and located in Cobb County, Georgia (the "Home"):

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 1171 OF THE 19TH DISTRICT AND 2ND SECTION OF COBB COUNTY, GEORGIA, BEING LOT 11, BLOCK D, WESTRIDGE SUBDIVISION, UNIT II, AS SHOWN ON PLAT OF SURVEY MADE FOR CHARLES H. HUEY BY FRANK L BOYD, REGISTERED LAND

SURVEYOR, DATED JULY 12, 1976, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN ON THE NORTHEASTERLY SIDE OF WESTVIEW DRIVE, 121.61 FEET NORTHWESTERLY FROM THE INTERSECTION OF THE NORTHEASTERLY SIDE OF WESTVIEW DRIVE AND THE NORTHWESTERLY SIDE OF WESTON COURT AS MEASURED ALONG THE NORTHEASTERLY SIDE OF WESTVIEW DRIVE: RUNNING THENCE WESTERLY ALONG THE NORTHERLY SIDE OF WESTVIEW DRIVE A DISTANCE OF 116.29 FEET TO AN IRON PIN; THENCE NORTH 02 DEGREES 32 MINUTES EAST 191 60 FEET TO AN IRON PIN; THENCE SOUTH 88 DEGREES 15 MINUTES EAST 141.6 FEET TO AN IRON PIN; THENCE SOUTH 09 DEGREES 40 MINUTES WEST 195.82 FEET TO AN IRON PIN ON THE NORTHEASTERLY SIDE OF WESTVIEW DRIVE AND THE POINT OF BEGINNING, AND BEING KNOWN AS 4496 WESTVIEW DRIVE, POWDER SPRINGS, COBB COUNTY, GEORGIA 30127 ACCORDING TO THE CURRENT SYSTEM OF STREET NUMBERING; AND BEING ALL OF THE PROPERTY OBTAINED BY OKWU UNDER WARRANTY DEED DATED MAY 29, 2001, RECORDED JUNE 15, 2001, IN BOOK 13379, PAGE 122, COBB COUNTY DEED RECORDS; **TAX PARCEL ID: 19117100570**.

3.

The Home has a fair market value, net of legitimate encumbrances (its "net equity") of no less than $100,000.

## III. THE PARTIES

*Plaintiff Quantum-Mac International, Inc.*

4.

Plaintiff Quantum-Mac International, Inc. ("Quantum-Mac") is a Georgia corporation with its locus of operations in the state of Georgia.

*Plaintiff Imo S. Okwu*

5.

Plaintiff Imo S. Okwu ("Okwu") is a citizen and resident of the state of Georgia.

*Defendant World Business Lenders, LLC*

6.

Defendant World Business Lenders, LLC ("World Business"), a New York Limited Liability Company, may be served in care of its registered agent in Georgia, to wit: Corporate Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia.

7.

World Business's principal business address and the "nerve center" of its operations is, on information and belief, 101 Hudson Street, 33rd Floor, Jersey City, New Jersey 07302-3905.

*Defendant WBL SPE III, LLC*

8.

Defendant WBL SPE III, LLC ("WBL"), a wholly owned subsidiary of World Business, and a Delaware Limited Liability Company; it may be served

in care of its registered agent for service, Cogency Global Inc., at 850 New Burton Rd., Ste. 201, Dover, Delaware 19904.

9.

WBL's principal business address and the "nerve center" of its operations is, on information and belief, 101 Hudson Street, 33rd Floor, Jersey City, New Jersey 07302.

## IV. Jurisdiction and Venue

10.

The Court's subject-matter jurisdiction is invoked under 28 U.S.C. §1332(a) in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and there exists complete diversity among the parties.

11.

This Court has subject-matter jurisdiction to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure in that an actual controversy exists between the Parties which is of sufficient immediacy and reality to warrant declaratory relief.

12.

This Court has subject-matter jurisdiction over the class-action claims asserted pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because this lawsuit has been brought as a class action on behalf of a proposed class in excess of 100 members; the aggregate claims of the Class members exceed $5 million exclusive of interest and costs; and, one or more of the members of the Class is a citizen of a different state than the defendants.

13.

The claims asserted in this action and on behalf of the proposed class "arise out of or relate to" the defendants' contacts with Georgia.[1]

14.

The defendants purposefully availed themselves of the benefits of Georgia, and therefore can be said to have reasonably anticipated being haled into Georgia.[2]

---

[1] See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[2] *Burger King Corp.*, 471 U.S. at 472.

15.

All of the defendants are subject to the jurisdiction of this Court pursuant to Georgia's Long Arm Statute, OCGA § 9-10-91, as the defendants transact business within Georgia, have committed a tortious act or omission in Georgia, and/or have committed a tortious injury in Georgia caused by an act or omission outside of Georgia.

16.

All of the defendants regularly do and solicit business, and engage in other persistent courses of conduct, and derive substantial revenue from services rendered in Georgia.

17.

This Court's exercise of personal jurisdiction over the named defendants comports with "fair play and substantial justice."[3]

18.

This Court's exercise of personal jurisdiction over the defendants would not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

---

[3] *Burger King Corp.*, 471 U.S. at 472.

19.

Venue is proper in the Northern District of Georgia, Atlanta Division, under 28 U.S.C. §1391(b) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.[4]

## V. Factual Allegations

20.

On May 29, 2001, Okwu acquired title to the Home, his primary residence, via a warranty deed that was recorded on June 15, 2001, and indexed at Book 13379, Page 501 of the Cobb County, Georgia real estate records.

21.

Okwu financed the purchase price of the Home with a conventional, 30-year mortgage loan.

22.

Okwu, an engineer by profession, is the sole shareholder and president of Georgia corporation and plaintiff Quantum-Mac.

---

[4] See also O.C.G.A. § 9-10-93.

23.

In 2018 Quantum-Mac was presented with a unique business opportunity arising from a contract to provide engineering services that it entered into with the City of Atlanta, Georgia.

24.

To perform under its contract with the City, Quantum-Mac required a virtually immediate infusion of operating capital.

25.

Quantum-Mac contacted a loan broker who referred it to World Business.

26.

World business agreed to make a short-term, $50,000 commercial loan to Quantum-Mac.

27.

When Quantum-Mac (by its officer, Okwu) was presented with the loan documents to sign, the name of the lender that appeared on the paperwork was *BOFI Federal Bank*.[5]

---

[5] See Note, Attachment "A."

28.

On October 1, 2018, BOFI Federal Bank changed its name to *Axos Bank* (hereinafter "Axos").

29.

Axos is a federal savings bank organized under the laws of the United States.[6]

30.

Axos is a wholly-owned subsidiary of Axos Financial Inc., f/k/a BofI Holding, Inc.

31.

Prior to September 12, 2018, Axos Financial, Inc. was known as BofI Holding, Inc.

32.

Axos's main office and official headquarters is located at 4350 La Jolla Village Drive, Suite 140, San Diego, California 92122.[7]

---

[6] See the National Bank Act, codified at 12 U.S.C. §§ 21, *et seq.* ("NBA")

[7] https://www.occ.gov/institution-search-final/details?bQuery=Axos (last viewed May 30, 2020).

33.

Although Axos has an operating presence in the State of Nevada, the lion's

share of Axos's loans and deposits are located in the State of California.

34.

For example, between 2016 and 2018, Axos originated or purchased

approximately $116 million of loans in Nevada; in California during the same

period this figure was approximately $563.3 million.[8]

35.

On or about September 5, 2018, Quantum-Mac took out a loan in the

principal amount of $50,000 (the "Quantum-Mac Loan").

36.

At the time of the issuance of the Quantum-Mac Loan, Axos was known as

"BOFI Federal Bank."

37.

To memorialize the Quantum-Mac Loan, Okwu, in his official capacity as

President of Quantum-Mac, executed a document captioned "Business

---

[8] See Office of the Comptroller of the Currency, March 3, 2019 CRA
Performance Evaluation report (Axos Bank, Charter Number: 716456)
https://www.occ.gov/static/cra/craeval/aug19/716456.pdf (last viewed May
31, 2020).

Promissory Note and Security Agreement" and dated September 5, 2018 (the "Note").[9]

38.

Okwu did not execute the Note, or any other document associated with the Quantum-Mac Loan, in his personal or individual capacity.

39.

The terms of the Note required the borrower to repay the entire (amortized) Quantum-Mac Loan over a 463-day term — ending December 12, 2019.

40.

The Note's principal was to accrue interest at a daily rate of .281369863014% [*sic*] — the equivalent of 88% per year — and a rate whose excessiveness was disguised by its being quoted at its daily equivalent.

41.

At the end of the Quantum-Loan term the borrower was scheduled to have repaid a total of $50,000 principal plus an additional $55,813.70 in accrued interest.

---

[9] Attachment "A."

42.

In connection with the Quantum-Mac Loan transaction, Okwu *personally* executed a Security Deed to his Home in favor of Axos (the "Security Deed").[10]

43.

Okwu never agreed to be personally obligated to satisfy the Note.

44.

Okwu never agreed to personally guarantee the Quantum-Mac Loan.

45.

The Security Deed was remarkable for several reasons, a few of which will be discussed below in ¶¶ 46–59.

> *The security deed collateralized a loan on which*
> *Okwu was not obligated and that he did not guarantee.*

46.

First, the Security Deed represented a pledge of collateral for a loan that was taken out by *Quantum-Mac*… and regarding which Okwu was neither a co-obligor nor a guarantor.

---

[10] Attachment "B."

*The security deed was prepared by
and to be serviced by World Business*

47.

Second, the Security Deed featured a caption that made reference to: *World Business*, as shown (in part) in Figure 1:



**Figure 1 – Caption of Security Deed (Attachment "B")**

48.

On its face, the Security Deed declared it was prepared by *World Business*.

49.

On its face, the Security Deed declared that, after its recording, the original instrument was to be mailed to *World Business*, at a Jersey City, New Jersey address.

-14-

50.

On its face, the Security Deed declared that [ad valorem] tax notices were to be sent to *World Business*, at a Jersey City, New Jersey address.

51.

The Security Deed was recorded on September 11, 2018, and indexed at Deed Book 15570, Pages 2310–319 of the Cobb County, Georgia real estate records.

*World Business prepares the*
*assignment of the Security Deed.*

52.

Third, sometime after the Security Deed was recorded, *World Business* prepared an instrument captioned "Assignment of Security Deed" (the "First Assignment")[11]

53.

The First Assignment was executed by one "Shannon Flood," a self-declared Vice President of World Business, as attorney in fact for Axos. Flood's signature line is reproduced in part in Figure 2:

---

[11] Attachment "C."



**Figure 2 — Excerpt (signature block) Attachment "C"**

54.

The ostensible purpose of the First Assignment was to transfer the Security

Deed from Axos to World Business.

55.

Sometime after the First Assignment from Axos to World Business was

prepared, another instrument captioned "Assignment of Security Deed" was

prepared (the "Second Assignment")[12]

---

[12] Attachment "D."

56.

The ostensible purpose of the Second Assignment was to transfer the

Security Deed from World Business to WBL

57.

The Second Assignment was *also* executed by "Shannon Flood," World

Business Lenders's vice president. Flood's signature line is reproduced in part

in Figure 3.



**Figure 3 — Excerpt (signature block) Attachment "D"**

58.

Each assignment was executed by Flood and witnessed by the same official
and unofficial witness.

59.

The assignments were each recorded on August 23, 2019, and indexed at
Deed Book 15658, Pages 6189 and 6192 respectively of the Cobb County,
Georgia real estate records.

*Quantum-Mac experiences cash-flow issues*

60.

The best-laid plans of mice and men often go awry.[13]

61.

Beginning in the winter of 2018, Quantum-Mac experienced financial
difficulties and cash-flow issues arising from the City of Atlanta's
performance of Quantum-Mac's engineering contract with the City.

62.

Had the City performed as agreed under its contract with Quantum-Mac,
the Quantum-Mac Loan would have been quickly satisfied and retired.

---

[13] Paraphrasing Robert Burns, *To a Mouse* (1786).

63.

In light of its cash-flow issues, in December of 2018, Quantum-Mac

contacted World Business to attempt to renegotiate the Quantum-Mac Loan.

64.

World Business agreed to amend certain terms of the Quantum-Mac Loan,

which included capitalizing Quantum-Mac's arrearage (which already

included accrued interest and thus raising Quantum-Mac's effective interest

rate due to the compounding); but it made few, if any, substantive concessions

on the original loan terms.

65.

By May of 2019, Quantum-Mac could no longer service the Quantum-Mac

Loan, which, by that time, was accruing daily interest charges of $282.67 that

were being automatically debited from Quantum-Mac's bank account.

*The "rent-a-bank" scheme*

66.

On information and belief, and at all times relevant to this Complaint, all

of the named defendants were engaged in what is known as a "rent-a-bank" or

a "rent-a-charter" scheme (the "Scheme").

67.

The Quantum-Mac Loan is, on information and belief, just one of many other loans to hundreds of other borrowers (the "Loans") that were originated and consummated under the Scheme.[14]

68.

Under the Scheme, Axos is the lender in name only.

69.

Axos has little substantial involvement in the origination or consummation of the Loans, each of which is actually made by defendant World Business.

70.

Axos only contributes its charter and national-bank status for the purpose of defeating the protections afforded by state usury laws.

71.

At all times relevant to this Complaint, a primary purpose of the Scheme was to allow World Business to circumvent state usury laws, including those of Georgia, that limit the interest rates and other finance charges that may be

---

[14] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

assessed on the Loans.[15]

72.

At all times relevant to this Complaint, World Business assumes

responsibility for all servicing and administration of the Loans — even before

Axos formally assigns the Loans to it.[16]

73.

On information and belief, and at all times relevant to this Complaint,

World Business pays all of Axos's expenses and fees in connection with the

origination and consummation of the Loans.[17]

74.

On information and belief, and at all times relevant to this Complaint,

World Business determines which loan applicants will receive Axos loans and

---

[15] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

[16] See ¶¶ 47 – 59, *supra*. Additional evidentiary support is anticipated to be discovered "after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

[17] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

bears all costs of making these determinations.[18]

75.

On information and belief, and at all times relevant to this Complaint, World Business assumes responsibility for all communications with loan applicants and consumers who receive Axos Loans.[19]

76.

On information and belief, and at all times relevant to this Complaint, World Business bears all risk of default, and is obligated to indemnify Axos against any claim arising from Axos's participation in the Scheme.[20]

77.

On information and belief, and at all times relevant to this Complaint, World Business collects a large percentage of the profits on the Loans while

---

[18] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

[19] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

[20] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

Axos's share is de minimis.[21]

78.

On information and belief, and at all times relevant to this Complaint, World Business directs the collection of payments from or enforcement of rights against borrowers arising from the loans and collects delinquency charges on the loans for late payments.[22]

79.

On information and belief, and at all times relevant to this Complaint, World Business makes or collects charges from borrowers that exceed the maximum finance charges that are permitted for supervised loans under Georgia Law.[23]

---

[21] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

[22] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

[23] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

80.

On information and belief, World Business paid all of Axos's expenses and fees in connection with the origination and consummation of the Quantum-Mac Loan.[24]

81.

On information and belief, World Business paid all of Axos's expenses and fees in connection with the origination and consummation of the Quantum-Mac Loan.[25]

82.

At all times relevant to this Complaint, World Business, WBL, and Axos were engaging in a rent-a-bank scheme — an activity recently described on National Public Radio as follows:

> ARNOLD: That's Lauren Saunders, an attorney with the National Consumer Law Center. She says a lot of these online lenders are using what she calls rent-a-bank schemes. This lets them skirt state law because there's no federal cap on interest rates, and most banks

---

[24] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

[25] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

are not subject to the state rate caps. Saunders says this can work in different ways, but the simple version is this. The online lender does basically all the work to find the customers, approve the loans, collect on them, but right when someone gets a loan...

SAUNDERS: At the moment that the money actually goes to the consumer...

ARNOLD: That money comes from a bank that's not covered by the interest rate limitations. So she says the online lender then immediately buys the loan back from the bank.

SAUNDERS: So it's not really a bank loan. They're just using banks as a fig leaf to make really high-cost loans — 160% interest — in states where those loans are illegal.[26]

*The Notice of Sale*

83.

In May 2020, WBL began publishing a notice of its intention to auction off Okwu's Home at a non-judicial foreclosure sale to take place on the Cobb County courthouse steps on June 2, 2020.

84.

According to the published notice, the non-judicial foreclosure sale is authorized under the power of sale in the Security Deed.

---

[26] See https://www.npr.org/2019/11/12/778632599/how-some-online-lenders-dodge-state-laws-to-charge-triple-digit-interest-rates (last viewed May 30, 2020) — tinyurl cite: https://tinyurl.com/yafwjxc8.

85.

Quantum-Mac attempted, again, to renegotiate the Quantum-Mac Loan but WBL refused to suspend the foreclosure sale.

86.

Okwu, through counsel, notified WBL's counsel in writing that WBL lacked the authority to sell Okwu's home, but the notice has been ignored.[27]

87.

As a direct and proximate result of the Quantum-Mac Loan transaction, Quantum-Mac has incurred damages, including but not limited to illegal interest payments in an amount no less than $133,519 of interest, bank fees, attorneys fees, and consequential damages.

88.

Should the threatened foreclosure sale be consummated, Okwu stands to lose in excess of $100,000 of equity in his Home.

---

[27] Attachment "E."

-26-

## V. CLAIMS FOR RELIEF

### FIRST COUNT
**(Okwu's Request for Declaratory
Judgment Determining that the Security
Deed does not encumber his Home)**

89.

The allegations in ¶¶ 20 – 88 are incorporated herein.

90.

Under the Federal Declaratory Judgment Act ("FDJA" — 28 U.S.C. §§ 2201–2202), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[28]

91.

Okwu seeks a declaration of legal rights as between himself and the named defendants.

---

[28] 28 U.S.C. § 2201(a).

92.

Okwu has suffered or stands to suffer an actual injury in the form of the

loss of the equitable title to his Home and valuable economic equity in excess

of $100,000.

93.

There exists an actual, immediate, substantial, and justiciable controversy

between Okwu and the named defendants arising out of the factual allegations

stated in ¶¶ 20 – 88.

94.

The factual allegations stated in ¶¶ 20 – 88 give rise to a case or

controversy that entitles Okwu to relief under the FDJA.

95.

The legal interests of Okwu and the named defendants are adverse.

96.

Okwu has a practical interest in the declaration of legal rights sought under

this Count.

97.

Under Georgia law, a personal guarantee must be in writing to be effective.

To be legally binding on the promisor, "[a] promise to answer for the debt,
default, or miscarriage of another," must be "in writing and signed by the
party to be charged therewith or some person lawfully authorized by him or
her."[29]

98.

Here, the Security Deed does not secure any personal debt, obligation, or
written guarantee entered into by Okwu.

99.

"A security deed, although conveying the legal title, does so for the
purpose of security only, and, upon the satisfaction of the obligation which it
is given to secure, is automatically extinguished in effect...."[30]

---

[29] To be legally binding on the promisor, "[a] promise to answer for the
debt, default, or miscarriage of another," must be "in writing and signed by
the party to be charged therewith or some person lawfully authorized by him
or her." O.C.G.A. § 13-5-30(a)(2); see *Chastain-Roberts Co., Inc. v. Better
Brands, Inc.*, 141 Ga. App. 186, 190 (1977) (holding that "a promise to
answer for the debt of another must be in writing").

[30] See *Hennessy v. Woodruff*, 210 Ga. 742, 744 (1954); see O.C.G.A. § 44-
14-67 ("...payment of the [secured] debt to any person legally authorized to
receive the same, shall operate to reconvey the title of the property to the
grantor or the grantor's heirs, executors, administrators, or assigns.").

100.

In the absence of an outstanding obligation or guarantee to be secured, the

Security Deed is void *ab initio* or, alternatively, automatically extinguished

by operation of law; and, the legal title conveyed to Axos automatically

reverted back to and merged with Okwu's equitable title to the Home by

operation of law.[31]

101.

Furthermore, Okwu is not in privity with either or both of the defendants.

102.

Accordingly, and assuming for the sake of argument that Okwu had entered

into an enforceable contract to guarantee the Loan, then only Axos would be

authorized to exercise the power of sale in the Security Deed.[32]

---

[31] See *Northwest Carpets, Inc. v. First Nat'l Bank of Chatsworth*, 280 Ga. 535, 537 (2006) (holding that the "satisfaction of the obligation which [a security deed] is given to secure," automatically extinguishes even a security deed with an "open end or "dragnet" clause).

[32] Guaranties alone are not negotiable instruments since they are conditional promises to pay a sum certain, and thus don't satisfy the UCC's definition of a negotiable instrument. See O.C.G.A. §§ 11-3-104(1)(b); 11-3-105(2)(a)"; *Fidelity Nat'l Bank v. Reid*, 180 Ga. App. 428, 430 (1986).

103.

Title to the Home should be declared to have reverted back to Okwu by operation of the automatic reversion of Georgia Code Section 44-14-67, thus rendering the Security Deed void and ineffectual.

104.

Okwu is entitled to an order, decree, and judgment (in recordable format) that declares and determines that the Security Deed reverted back to Okwu by operation of law, and that the Security Deed is, accordingly, void and ineffectual, and that it does not encumber the Home in any way.

105.

A favorable decision by this Court is likely to address Okwu's injury.

106.

After reasonable notice and hearing, Okwu is entitled to such other and further necessary or proper relief based on this Court's declaration of the rights of the parties under this Count.

### SECOND COUNT
### (Okwu and Quantum's Request for
### Declaratory Judgment Determining that the
### Loan is Usurious under Georgia Law)

107.

The allegations in ¶¶ 20 – 88, and 90 are incorporated herein.

108.

Okwu and Quantum seek a declaration of legal rights as between the named

parties.

109.

The Quantum-Mac Loan is subject to the restrictions of Georgia Code

Section 7-4-18(a), which states in pertinent part:

> (a) Any person, company, or corporation who shall reserve, charge,
> or take for any loan or advance of money, or forbearance to enforce
> the collection of any sum of money, any rate of interest greater than
> 5 percent per month, either directly or indirectly, by way of
> commission for advances, discount, exchange, or the purchase of
> salary or wages; by notarial or other fees; or by any contract,
> contrivance, or device whatsoever shall be guilty of a
> misdemeanor….

110.

In other words, Code Section 7-4-18(a) outlaws any loan whose interest

rate exceeds 60% per year.

111.

Because the Quantum-Mac Loan's interest rate exceeds 60% per year, *any and all* interest accruing on the principal is uncollectible and forfeit by operation of law.[33]

112.

The Quantum-Mac Loan is not subject to regulation or preemption under the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA") for many reasons, just a few of which are discussed below.[34]

> *A. Axos is not the true lender in this rent-a-bank scheme.*

113.

First, Axos is not the "true lender."

114.

Given the obvious levels of control that World Business executed over the entire loan transaction from origination to servicing, Axos is the lender in name only; and, World Business is the *de facto*, "true" lender.

---

[33] See *Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 273 (1990) (holding that interest charged at a usurious rate "must be forfeited" in its entirety).

[34] Pub. L. No. 96–221 § 521, 94 Stat. 132, codified as section 27 of the Federal Deposit Insurance Act (12 U.S.C. 1831d).

115.

Under DIDA, Axos is allowed to charge interest on loans it makes in

Georgia at rates that are as high as "the rate allowed by the laws of the State,

territory, or district where the bank [Axos] is located, whichever may be

greater."[35]

116.

Conveniently, the state of Nevada, from which Axos falsely claims

provenance in the Note, has no maximum usury rate.

117.

Other courts have found that similar rent-a-bank arrangements represent

conspiracies by de facto lenders to evade state regulation, and that public

policy dictates that they be disregarded on the "true-lender" theory.[36]

---

[35] See 12 U.S.C.A. § 1831d(a).

[36] See, e.g., *In re Community Bank*, 418 F.3d 277, 295–96 (3d Cir. 2005); *Colorado ex rel. Salazar v. Ace Cash Exp., Inc.*, 188 F. Supp.2d 1282 (D. Colo. 2002); *Madden v. Midland Funding, LLC*, 786 F.3d 246, 250-51 (2d Cir. 2015) (ruling that assignee of loan from a national bank was subject to state usury law); Order Denying Motion to Dismiss in *Pennsylvania v. Think Fin., Inc.*, No. 14-cv-7139, 2016 U.S. Dist. LEXIS 4649 at *3, *72, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016).

*B. Axos is not a Nevada Institution.*

118.

Even if Axos were found to be the true lender (it's not) Axos's arbitrary selection of Nevada as its home state — thus supplying the basis for the Note's choice-of-law clause — is also an artifice.

119.

Under the National Bank Act, Axos is, by operation of law, a citizen of the State of California.[37]

*C. Georgia law controls this action.*

120.

Absent an enforceable choice-of-law provision, under Georgia law the validity and "interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law

---

[37] 28 U.S.C. § 1348; see *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located").

of the state where the contract is performed will apply."[38]

121.

However, under Georgia law, contract formation principles cannot "be used to abrogate a state's police powers."[39]

122.

Specifically, a choice-of-law provision in a contract cannot be used to defeat Georgia's usury laws:

> The parties to a private contract who admittedly make loans to Georgia residents cannot, by virtue of a choice of law provision, exempt themselves from investigation for potential violations of Georgia's usury laws.[40]

---

[38] See *Today's Shopping Network, Inc. v. Roberts Commc'ns Network, Inc.*, 1:05-CV-1908-JEC, 2006 WL 8432839, at *4 (N.D. Ga. Feb. 13, 2006) (citing

[39] See *Western Sky Financial, LLC v. State ex rel. Olens*, 300 Ga. 340, 346–47 (2016) (quoting with approval *Hudson County Water Co. v. McCarter*, 209 U.S. 349, 357 (1908): "[o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them… [t]he contract will carry with it the infirmity of the subject matter"); but *cf. Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 Fed. Appx. 865, 874 (11th Cir. 2018) (Nevada forum-selection clause is enforceable only because usury defense is "waivable under *Florida* law") (emphasis added).

[40] *BankWest, Inc. v. Oxendine*, 266 Ga. App. 771, 775 (2004) (case involving an investigation into payday-lending practices).

-36-

123.

The Quantum-Mac Loan has no actual connection to the State of Nevada.

124.

Because neither World Business nor WBL are federally regulated banks (or

banks at all), they don't benefit from any federal preemption against state

usury claims.[41]

125.

The factual allegations in ¶¶ 20 – 88 give rise to a case or controversy that

entitle Okwu and Quantum to relief under the FDJA.

126.

There exists an actual, immediate, substantial, and justiciable controversy

between the named parties arising out of the factual allegations.

127.

Okwu has suffered or stands to suffer an actual injury in the form of the

loss of the equitable title to and the economic equity in his Home.[42]

---

[41] See, e.g., *In re Community Bank*, 418 F.3d 277, 295–96 (3d Cir. 2005)
(holding that state law claims against a non-bank are sufficient to avoid
preemption under DIDA and NBA).

[42] Okwu acknowledges that if this Court grants him relief under his First
Count for Declaratory Judgment — i.e., declaring that the Quantum-Mac Loan

128.

Quantum stands to suffer an actual injury including, by way of example, legal liability for the payment of usurious interest.

129.

The legal interests of the named plaintiffs and the named defendants are adverse.

130.

Okwu and Quantum have a practical interest in the declaration of legal rights sought under this Count.

131.

Okwu and Quantum are entitled to an order, decree, and judgment declaring and determining that Axos is not the true lender of the Quantum-Mac Loan and that Defendant World Business, defendant WBL, or both are individually or collectively the true lenders in connection with the Quantum-Mac Loan, and that, accordingly, they may not escape the usury protections afforded by Georgia law to Georgia citizens and actors.

---

does not encumber the Home — then this (Second) Count for Declaratory Judgment would be moot as to him but not as to Quantum-Mac.

132.

Alternatively, even if Axos is determined to be the true lender regarding the Quantum-Mac Loan (it's not), its actual headquarters and home state under the DIDA and NBA is in actuality California, and not Nevada; and, accordingly, California's usury laws (which are more restrictive than Georgia's) would control the Quantum-Mac Loan.

133.

Okwu and Quantum are entitled to an order, decree, and judgment declaring and determining that the Quantum-Mac Loan is usurious under Georgia law, and therefore that only the principal portion of the Quantum-Mac Loan is due to be repaid, and any interest paid or demanded is to be forfeit or disgorged.

134.

A favorable decision by this Court is likely to address either or both plaintiffs' injuries.

135.

After reasonable notice and hearing, Okwu and Quantum are entitled to such other and further necessary or proper relief based on this Court's

declaration of the rights of the parties under this Count.

### THIRD COUNT
### (Okwu's Claim for Conventional Quiet
### Title under O.C.G.A. § 23-3-40, et seq.)

136.

The allegations in ¶¶ 20 – 88, and 90 – 135 are incorporated herein.

137.

The Security Deed has caused title to Okwu's Home to be clouded.

138.

The Security Deed is the product of inequitable and unlawful conduct.

139.

The Security Deed operates to throw a cloud or suspicion upon Okwu's title.

140.

Okwu is threatened with injury because, due to the cloud on his title, he may lose lawful record title to and lawful possession of the Home if the non-judicial foreclosure sale were to occur or not be rescinded.

141.

Under Georgia Code Sections 23-3-41 and 23-3-42, Okwu is entitled to the

equitable remedy of quia timet to cancel of record the Security Deed recorded

at Deed Book 15570 Pages 2310–19 of the Cobb County deed records.

142.

Okwu is entitled to costs of litigation against the defendants "in the

discretion of the court" under Georgia Code Section 23-3-41.


**FOURTH COUNT**
**(Quantum's claim for Civil Usury)**

143.

The allegations in ¶¶ 20 – 88, and 90– 135 are incorporated herein.

144.

Georgia Code Section 7-4-18(a) outlaws any loan whose interest rate

exceeds 60% per year.

145.

Because the Quantum-Mac Loan's interest rate exceeds 60% per year, *any*

*and all* interest accruing on the principal amount is uncollectible by operation

of law.[43]

146.

Quantum is entitled to relief in the form of an equitable rescission of its contractual obligation to pay any interest accruing on the Quantum-Mac Loan principal.

**FIFTH COUNT**
**(Okwu's Claim for**
**Wrongful Foreclosure)**

147.

The allegations in ¶¶ 20–146 are incorporated herein.

148.

Georgia law, found at Code Section 23-2-114, requires "[p]owers of sale in deeds of trust, mortgages, and other [ ] instruments be strictly construed and [ ] be fairly exercised."[44]

---

[43] See *Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 273 (1990) (holding that interest charged at a usurious rate "must be forfeited" in its entirety).

[44] Although there is a technical difference between the concepts of "deed of trust" or "mortgage" and "security deed" these terms have been declared to be effectively interchangeable in this context. See, e.g., *U.S. Bank v. Gordon*, 289 Ga. 12, 14 (2011) ("[T]his court has treated deeds to secure debts... as equitable mortgages.")

149.

Breach of the requirement of fairly exercising the power of sale represents an actionable breach of duty: "[t]here exists a statutory duty upon a [mortgage lender] to exercise [the power of sale] fairly and in good faith… . Although arising from a contractual right, breach of this duty is a tort [, i.e., "wrongful foreclosure,"] compensable at law."[45]

150.

A claim for wrongful foreclosure may be brought against a party who has "no legal right to foreclose on the property."[46]

151.

A claim for wrongful foreclosure gives the aggrieved debtor alternative legal remedies of (a) cancellation of the foreclosure sale and recovery of damages not associated with the value of the property, or (b) damages for the

---

[45] See *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285 (1994); see *Stewart v. Suntrust Mortgage, Inc.*, 331 Ga. App. 635, 639 (2015) (breach of the servicer's duty of loyalty and good faith in servicer's capacity as borrower's attorney-in-fact also gives rise to wrongful foreclosure).

[46] See *Mike's Furniture Barn, Inc. v. Smith*, 342 Ga. App. 558, 563 (2017).

loss of the equity in the unlawfully-foreclosed property.[47]

152.

Despite the fact that, as of the filing of this Complaint, the noticed non-judicial foreclosure sale remains unconsummated, defendant WBL has nevertheless commenced foreclosure proceedings as against Okwu's Home without authority and unlawfully.

153.

"It is not necessary that [a] foreclosure be completed to bring an action for wrongful foreclosure." The fact that the creditor "initiated foreclosure proceedings by advertising the properties for sale is sufficient to support a claim for wrongful foreclosure."[48]

154.

WBL's actions (and those of its principal, World Business) have directly

---

[47] See *Calhoun First Nat'l Bank,* 264 Ga. at 285, *Roylston v. Bank of America, N.A.*, 290 Ga. App. 556, 556 n.1 (2008), *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327 (1980) (alternative remedies for wrongful foreclosure).

[48] *Sears Mortgage Corp. v. Leeds Bldg. Products*, 219 Ga. App. 349, 350 (1995), aff'd in part, rev'd in part, 267 Ga. 300 (1996), and vacated in part, 225 Ga. App. 806 (1997), citing *Sale City v. Planters & Citizens Bank*, 107 Ga. App. 463 (1963).

and proximately caused Okwu to suffer substantial mental anguish,

nervousness, sleeplessness, and anxiety.[49]

### 155.

WBL and World Business are liable to Okwu for exercising the power of

sale and threatening to foreclose on his Home without the legal authority to do

so in an amount to be determined.

## SIXTH COUNT
### (Okwu's Claim for Wrongful Attempted Foreclosure)

### 156.

The allegations in ¶¶ 20 – 155 are incorporated herein.

### 157.

Despite the fact that, as of the filing of this Complaint, the noticed non-

judicial foreclosure sale remains unconsummated, the World Business

Defendants have nevertheless commenced foreclosure proceedings as against

---

[49] See *Essien v. CitiMortgage, Inc.*, 335 Ga. App. 727(2016), citing with approval, *In re Pullen*, 451 B.R. 206, 212 (Bankr. N.D. Ga. 2011), for the proposition that an attorney's transmitting letters "threatening immediate foreclosure, despite fact that lender whom he represented, before accelerating indebtedness, had not complied with notice provisions of deed to secure debt, the complaint stated a claim for attempted wrongful foreclosure in violation of Georgia law, which could support an award of damages for emotional distress, as well as violations of the Fair Debt Collection Practices Act." Id. at 729.

the Home without authority and unlawfully.

158.

The World Business Defendants' actions have directly and proximately

caused Okwu to suffer substantial mental anguish, nervousness, sleeplessness,

and anxiety.

159.

The World Business Defendants are liable to Okwu for attempting to

exercise the power of sale and threatening to foreclose on Okwu's Home

without the legal authority to do so in an amount to be determined.

160.

The World Business Defendants are liable to Okwu for attempting to

exercise the power of sale and threatening to foreclose on Okwu's Home

without the legal authority to do so in an amount to be determined.

**SEVENTH COUNT**
**(Okwu's and Quantum's Claim**
**for Expenses of Litigation for**
**State-Law Claims Under**
**O.C.G.A. § 13-6-11)**

161.

The allegations in ¶¶ 20 – 160 are incorporated herein.

162.

Okwu and Quantum have incurred and will continue to incur attorney's fees and other expenses of litigation to prosecute the state-law claims asserted in this action.

163.

Each named defendant's actions has demonstrated bad faith, has no legal justification, and has caused Okwu and Quantum unnecessary delay and expense.

164.

Okwu and Quantum are entitled to recover all costs of the prosecution of this action, including reasonable attorney's fees, pursuant to Georgia Code Section 13-6-11.

### EIGHTH COUNT
### (Okwu's Claim for Nominal Damages)

165.

The allegations in ¶¶ 20 – 160 are incorporated herein.

166.

"The law infers some damage from the invasion of a property right and if no evidence is given of any particular amount of loss, declares the right by

awarding what it terms nominal damages."[50]

167.

With respect to Okwu's claims for wrongful (attempted) foreclosure if he is able only to prove a less than substantial measure of actual damages, or his damages are not susceptible of reasonable certainty of proof as to their extent, Okwu is entitled to recover nominal damages in vindication of his having brought this action "upon a good cause."

168.

Okwu is entitled to an award of nominal damages according to the circumstances of this case.

### VI. CLASS ALLEGATIONS

169.

The allegations in ¶¶ 20 – 160 are incorporated herein.

*Georgia's State Procedural Prohibition On Class*
*Actions Pursuant to the Usury Statute and the*
*FBPA Is Pre-empted by Fed. R. Civ. P. 23*

---

[50] See *Dierkes v. Crawford Orthodontic Care, P.C.*, 284 Ga. App. 96, 100 (2007) (quoting *Callahan v. Panfel*, 195 Ga. App. 891, 893 (1990)).

170.

The FBPA, at OCGA § 10-1-399(a), states:

> Any person who suffers injury or damages as a result of a violation of Chapter 5B of this title, as a result of consumer acts or practices in violation of this part, as a result of office supply transactions in violation of this part or whose business or property has been injured or damaged as a result of such violations *may bring an action individually, but not in a representative capacity*, against the person or persons engaged in such violations under the rules of civil procedure to seek equitable injunctive relief and to recover his or her general and exemplary damages sustained as a consequence thereof in any court having jurisdiction over the defendant[.] [Emphasis supplied.]

.

171.

Georgia's usury statute states in relevant part:

> A claim of violation on any loan secured by an interest in real estate may be asserted in an individual action only and may not be the subject of a class action under Code Section 9-11-23 or any other provisions of law.[51]

172.

However, as the United States Supreme Court held in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010), Rule 23 of the Federal Rules of Civil Procedure gives the plaintiffs discretion to bring this action as a class action in federal courts:

---

[51] O.C.G.A. § 7-4-21(a).

[Fed. R Civ. P. 23] says that if the prescribed preconditions are satisfied "[a] class action may be maintained" (emphasis added)--not "a class action may be permitted." Courts do not maintain actions; litigants do. The discretion suggested by Rule 23's "may" is discretion residing in the plaintiff: He may bring his claim in a class action if he wishes. And like the rest of the Federal Rules of Civil Procedure, Rule 23 automatically applies "in all civil actions and proceedings in the United States district courts," Fed. Rule Civ. Proc. 1.[52]

173.

In *Shady Grove* the Supreme Court confirmed that Rule 23 is a procedural and not a substantive rule:

In sum, it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule. We have held since Sibbach [v. Wilson & Co., 312 U.S. 1, 14 (1941)], and reaffirmed repeatedly, that the validity of a Federal Rule depends entirely upon whether it regulates procedure.[53]

174.

Not long ago, the Eleventh Circuit applied *Shady Grove* to an action brought under an Alabama statute that is analogous to Georgia's FBPA statute in *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 13___ (11th

---

[52] *Shady Grove*, 559 U.S. at 400.

[53] Id. at 410.

Cir. 2015):

> This appeal presents two issues. The first arises from a conflict between Federal Rule of Civil Procedure 23, which authorizes class actions including for consumer claims of this kind, and the ADTPA, which creates a private right of action but forbids private class actions. We hold that Rule 23 controls.[54]

### 175.

Any prohibition under Georgia's FBPA to the application of Fed. R. Civ. P. 23 has been abolished, and this matter may therefore proceed as a class action in federal court.

### 176.

"The term 'usury' means reserving and taking or contracting to reserve and take, either directly or indirectly, a greater sum for the use of money than the lawful interest."[55]

### 177.

The Georgia Code defines usurious interest as follows:

> Any person, company, or corporation who shall reserve, charge, or take for any loan or advance of money, or forbearance to enforce the

---

[54] The Alabama Deceptive Trade Practices Act ("ADTPA") is Alabama's equivalent law to Georgia's Fair Business Practices Act.

[55] O.C.G.A. § 7-4-1.

> collection of any sum of money, any rate of interest greater than 5 percent per month, either directly or indirectly, by way of commission for advances, discount, exchange, or the purchase of salary or wages; by notarial or other fees; or by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor[.][56]

178.

"Any person, company, or corporation violating the provisions of Code

Section 7-4-2 shall forfeit the entire interest so charged or taken or contracted

to be reserved, charged, or taken."[57]

179.

The named defendants also meet the definition of "loan broker" under

Georgia law:

> "Loan broker" means any person, firm, or corporation who does not operate or maintain an office that is open regularly to the public for the transaction of business and where potential borrowers actually visit to transact, discuss, or negotiate potential loans and:
>
> (A)    For or in expectation of consideration, arranges or attempts to arrange or offers to fund a loan of money, a credit card, or a line of credit;

---

[56] O.C.G.A. § 7-4-18.

[57] O.C.G.A. § 7-4-10(a).

(B)    For or in expectation of consideration, assists or advises a borrower in obtaining or attempting to obtain a loan of money, a credit card, a line of credit, or related guarantee, enhancement, or collateral of any kind or nature;

(C)    Acts for or on behalf of a loan broker for the purpose of soliciting borrowers; or

(D)    Holds himself out as a loan broker.

"Loan broker" does not include any regulated lender or any third party soliciting borrowers for a regulated lender pursuant to a written contract with the regulated lender or any mortgage banker or mortgage broker approved by a regulated lender or the federal Department of Housing and Urban Development, the Veterans' Administration, the Federal National Mortgage Corporation, or the Federal Home Loan Mortgage Corporation. [58]

180.

A violation of the "Loan Broker" Act is also a violation of Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. §§ 10-1-390 et. seq.

181.

In making the Loans described at ¶¶ 66 –81  to be repaid at a future date, with interest, and calculated at an unlawfully high rate, the named defendants have, collectively or individually, systematically and repeatedly violated, or

---

[58] O.C.G.A. § 7-7-1.

aided and abetted violations of Georgia law.[59]

182.

Quantum-Mac seeks to represent a class of claimants against the named

defendants as follows:

> All individuals and/or entities who are citizens and residents of
> Georgia who received monetary loans, advances, or similar funding
> from any one or more of the named defendants that were to be repaid
> at a later date along with interest and loan fees at rates of interest
> found to be usurious under Georgia law.

183.

The Loans constitute illegal transactions in violation of Georgia Code

Section 7-4-18.

184.

The Loans also constitute illegal transactions in violation of Georgia Code

Section 10-1-399.

185.

On information and belief, Quantum-Mac and the Plaintiff Class Members

were solicited by the named defendants through a standard marketing scheme

through which the named defendants used their standard "rent-a-bank"

---

[59] "The usury stalks like a pestilence through every form of contract, and
poisons all it touches." *Tribble v. Anderson*, 63 Ga. 31, 56 (1879).

scheme to make usurious loans. Such marketing and services are typical of those experienced by Quantum-Mac and the proposed Plaintiff Class Members.[60]

186.

The named defendants commonly targeted Georgia residents for usurious loans.

187.

The interest collected by the named defendants from the proposed Plaintiff Class Members are uniformly assessed to every customer of the named defendants and can readily be determined from a ministerial review of the records of the named defendants.

188.

On information and belief, the loan agreements entered into between the named defendants and Plaintiff are standard agreements which are substantially the same as the agreements the named defendants entered into with the Plaintiff Class Members.

---

[60] These factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

189.

The names and addresses of the Plaintiff Class Members can readily be determined from a ministerial review of the records of the named defendants and through the account statements of the named defendants pertaining to collection of principal and usurious interest.

190.

The membership of the classes is numerous, and joinder of individual plaintiffs is impractical. On information and belief, the named defendants have issued loans with usurious interest to hundreds of residents of the State of Georgia within one year from the filing of this Complaint.

191.

There are questions of law and fact common to all members of the Plaintiff class, and these common questions of law and fact predominate over any individual issues. The principal questions pertinent to the classes as a whole include by way of example:

    (a)    Whether the named defendants' "rent-a-bank" scheme

            has been set up for the purpose of fraudulently

defeating the borrowers' states' predatory-lending

protections;

(b)    Whether the named defendants are "de-facto" lenders;

(c)    Whether the named defendants are charging usurious

interest on the loans that they have made to Plaintiff

Quantum-Mac, and the Plaintiff Class;

(d)    Whether the named defendants' standard means of

doing business in making the usurious loans is illegal

under Georgia law;

(e)    Whether the named defendants are "loan brokers"

under Georgia law;

(f)    Whether the named defendants violated Georgia law

by performing prohibited acts under O.C.G.A. §

7-7-2;

(g)    Whether the named defendants committed violations

of Georgia's FBPA;

(h)    The liability of the named defendants for violations of

Georgia's usury law;

(i) The liability of the named defendants for violations of the

FBPA;

(j) The appropriate measure of damages and the appropriate

remedies;

(k)     Defenses raised by the named defendants;

(l) The availability of actual damages for the named

defendants' intentional violation of the FBPA pursuant to

O.C.G.A. § 10-1-399;

(m)     The availability of trebled actual damages for the

named defendants' intentional violation of the FBPA

pursuant to O.C.G.A. § 10-1-399; and,

(n)     The availability of reasonable attorneys' fees and

costs of litigation for the named defendants'

intentional violation of the FBPA pursuant to

O.C.G.A. § 10-1-399.

192.

Quantum-Mac's claims are typical of the claims of the Plaintiff Class

Members, which all arise from the same operative facts and are based on the

same legal theory, and Plaintiff's claims will thus adequately represent those

of the Plaintiff Class Members.

193.

Quantum-Mac will fairly and adequately protect the interests of the

Plaintiff Class Members. Quantum-Mac has retained counsel with experience

in class action litigation, and they are not aware of any interest that might

cause them not to vigorously pursue this case.

194.

A class action is superior to other available methods for the fair and

efficient adjudication of this controversy since joinder is impracticable. The

expense and burden of individual litigation make it virtually impossible for

the members of the class to proceed individually, and it is therefore most

efficient to resolve all claims based on the named defendants' conduct in one

forum.

195.

Quantum-Mac is aware of no difficulties that will be encountered in the

management of this litigation that would render the action unmanageable.

196.

This is not a class action that will require an analysis of the named defendants' conduct as to individual class members.

197.

Prosecution of separate actions by individual Plaintiff Class Members would create adjudications that would be dispositive of the interests of the other members not parties to the adjudication. Plaintiff is not aware of any other pending actions against these defendants for these same causes of action.

198.

Without a class action mechanism, members of the Plaintiff Class would be substantially impaired or impeded in their ability to protect their interests. The value of claims of the individual class members would be in an amount that makes prosecution outside of the class action uneconomical.

199.

A final judgment on the merits of the named Plaintiff's claims would be fully dispositive of the claims and interests of those similarly situated who are

not specifically named as a plaintiff in this action.

## NOTICE OF INTENT TO RECORD LIS PENDENS

200.

The plaintiffs hereby notify all concerned that they are undertaking to record a Notice of Lis Pendens regarding the Home in the Lis Pendens Docket of the real estate records of the Clerk of COBB COUNTY Superior Court.

## VII. DEMAND FOR JUDGMENT

WHEREFORE, the plaintiffs request that a judgment issue granting the relief sought in this Complaint, including:

(a)    On the First Count for Declaratory Judgment: a determination and declaration that title to the Home reverted back to Okwu by operation of law, and such other and further necessary or proper relief based on this Court's declaration of rights;

(b)    On the Second Count for Declaratory Judgment: a determination and declaration that defendant World Business, defendant WBL, or both are individually or collectively the true lender or lenders in connection with the Quantum-Mac Loan, and that, accordingly, they

may not avoid and defeat the usury protections afforded by Georgia law, and such other and further necessary or proper relief based on this Court's declaration of rights;

(c)    On the Third Count for Conventional Quiet Title: a decree in quia timet directing that the Security Deed be rescinded and canceled of record, that the Clerk of Cobb County Superior Court be directed to record and appropriately cross-index the order and decree, and for an award of costs of litigation "in the discretion of the [C]ourt";

(d)    On the Fourth Count for Civil Usury: equitable rescission of Quantum-Mac's contractual obligation to pay any interest accruing on the Quantum-Mac Loan principal;

(e)    On the Fifth Count for Wrongful Foreclosure: alternatively (a) cancellation of the foreclosure sale and recovery of damages not associated with the value of the property, or (b) damages for the loss of the equity in the unlawfully-foreclosed property;

(f)    On the Sixth Count for Wrongful Attempted Foreclosure: an award of damages calculated according to law;

(g)    On the Seventh Count for Expenses of Litigation: an award of

compensatory damages for the expenses of litigation, including

reasonable and necessary attorney's fees, according to proof;:

(h)　On the Eighth Count for Nominal Damages: an award of nominal

damages according to the circumstances of this case;

(i)　For all costs of the prosecution of this matter;

(j)　**For TRIAL BY JURY on all issues so triable**; and,

(k)　For such other and further relief as the Court may deem equitable and

just in the premises.

## REGARDING CLASS CERTIFICATION

(a)　That Plaintiff Quantum-Mac be designated class representatives for

the Plaintiff Class as defined herein;

(b)　That Plaintiff Quantum-Mac's counsel be designated class counsel

for Plaintiff Class as defined herein;

(c)　That the Plaintiff Class be certified for all individuals and/or entities

who are citizens and residents of Georgia who received monetary

loans, advances, or similar funding from any one or more of the

named defendants that were to be repaid at a later date along with

interest and loan fees at rates of interest found to be usurious under

Georgia law;

(d)    That the Court hold a hearing as soon as practicable for the

determination of class certification for the Plaintiff in accordance

with Fed. R. Civ. P. 23;

(e)    For violations of Georgia's usury law, that Plaintiff and the Plaintiff

class receive a setoff pursuant to O.C.G.A. § 7-4-10(b) for the

usurious interest charged and collected by the named defendants;

(f)    For violations of the FBPA, that Plaintiff Quantum-Mac and the

members of Plaintiff Class be awarded their actual damages, trebled

damages, exemplary damages, and reasonable attorney's fees and

costs;

(g)    That the named defendants be required to pay all monies herein

referred to in subparagraphs (g) and (h) into a common fund for the

benefit of the Plaintiff Class, less expenses and attorneys' fees;

(h)    That the Court conduct a "fairness hearing," after due and proper

notice to all members of the Plaintiff Class, and make such award of

attorneys' fees and expenses as the Court deems appropriate from the

common funds (as above referred to) and/or from the named

defendants;

(i)   That Plaintiff Quantum-Mac, individually and as class representative for the Plaintiff Class, have a trial by jury;

(j)   That Plaintiff Quantum-Mac and the members of Plaintiff Class be awarded interest on any award granted, with such interest accruing from the time of the filing of this Complaint until the time final Judgment in this case is paid;

(k)   That Plaintiff Quantum-Mac be awarded an incentive award from the named defendants for the benefit Plaintiff Quantum-Mac has conferred on the Plaintiff Class members through its commitment of time and expense in conducting this lawsuit; and

(l)   That Plaintiff Quantum-Mac, individually and as class representative of all others similarly situated as the Plaintiff Class, have such other relief as this Court deems proper.

<<<SIGNATURE LINES CONTINUED ON NEXT PAGE>>>

Respectfully submitted this ___2nd___ day of _____June_____, 2020.

| | |
|---|---|
| 1551 Jennings Mill Road<br>Suite 3100-B<br>Watkinsville, Georgia 30677<br>(706) 395-2750<br>Facsimile: 706-996-2576<br>jhurt@hurtstolz.com | HURT STOLZ, P.C.<br><br><br>By:/s/ James W. Hurt, Jr.<br>    James Hurt<br>    Georgia State Bar No. 380104<br>    Attorney for Plaintiffs |
| 315 W. Ponce de Leon Ave.<br>Ste. 250<br>Decatur, GA 30030-5100<br>(404) 373-0205<br>(404)795-8999 FAX<br>general_mailbox@alembik.com | RICHARD S. ALEMBIK, PC<br><br><br>By:/s/ Richard S. Alembik<br>    Richard S. Alembik<br>    Georgia State Bar No. 008770<br>    Attorney for Plaintiffs |

STATE OF GEORGIA

COUNTY OF COBB

## **VERIFICATION**

The undersigned **Imo S. Okwu**, individually and as President of Quantum-Mac International, Inc., a Georgia corporation, am over the age of 18, *sui juris* and otherwise competent to testify in court to the facts set forth in the foregoing Complaint.

I hereby declare under penalty of perjury that each fact or opinion set forth in the foregoing Complaint is true and accurate — unless it is qualified as being "on information and belief," in which case the fact or opinion is true to the best of my or my attorneys' knowledge, information, and belief formed after reasonable inquiry.

I understand that any intentionally false statement that is made in the Complaint could represent an act of fraud, perjury, and/or false swearing, for which I could be prosecuted civilly or criminally.

This ___2nd___ day of ___June___, 2020.

QUANTUM-MAC
INTERNATIONAL, INC.                     IMO S. OKWU

*imookwu*
By: imookwu (Jun 2, 2020 11:47 EDT)          *imookwu*
    Imo S. Okwu                      imookwu (Jun 2, 2020 11:47 EDT)

Its: President                              Individually

# Verification_FINAL

Final Audit Report                                                    2020-06-02

| | |
|---|---|
| Created: | 2020-06-02 |
| By: | Clif Kitchens (cak@alembik.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAgBwSOOao6ma_vj56r5sOKSOEMcotZ6HQ |

# "Verification_FINAL" History

📄 Document created by Clif Kitchens (cak@alembik.com)
2020-06-02 - 3:44:45 PM GMT- IP address: 74.95.30.21

📧 Document emailed to imookwu (imookwu@bellsouth.net) for signature
2020-06-02 - 3:45:20 PM GMT

📄 Email viewed by imookwu (imookwu@bellsouth.net)
2020-06-02 - 3:46:45 PM GMT- IP address: 69.147.93.14

✍️ Document e-signed by imookwu (imookwu@bellsouth.net)
Signature Date: 2020-06-02 - 3:47:55 PM GMT - Time Source: server- IP address: 68.79.143.239

✅ Signed document emailed to Clif Kitchens (cak@alembik.com) and imookwu (imookwu@bellsouth.net)
2020-06-02 - 3:47:55 PM GMT

Adobe Sign