IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| QUANTUM-MAC INTERNATIONAL, INC., and IMO S. OKWU, Individually and on Behalf of all Others Similarly Situated<br><br>*Plaintiffs*,<br><br>v.<br><br>WORLD BUSINESS LENDERS, LLC, and WBL SPE III, LLC,<br><br>*Defendants*. | CIVIL ACTION<br><br>NO.: 1:20-cv-02353-WMR |

## ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Improper Venue and to Compel Arbitration, [Doc. 36], and Plaintiffs' subsequent Motion for Discovery as to Arbitrability. [Doc. 38]. Upon consideration of the arguments of the parties, applicable law, and all appropriate matters of record, the Motion to Dismiss for Improper Venue and Compel Arbitration is **GRANTED**. [Doc. 36]. Consequently, Plaintiffs' Motion for Discovery as to Arbitrability is DENIED. [Doc. 38].

I.     **FACTUAL BACKGROUND**

On September 7, 2018,[1] Quantum-Mac closed on a $50,000 Loan from BofI Federal Bank ("BofI"). [Doc. 1-1 at 9]. Okwu, the President of Quantum-Mac, executed a "Business Promissory Note and Security Agreement" (the "Note") to memorialize the Loan. [Doc. 36-5]. The Note contained an arbitration provision stating "[a]ny of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document." [Doc. 36-5 at 8]. The Note also specified that claims could only be brought on behalf of individuals and that class-action suits were not permitted. [*Id.*].

Okwu also executed a "Continuing Guaranty, Personal (Unlimited)" which is "enforceable by Lender, and its successors and assigns" regardless of any internal restructuring of Borrower or Lender. [Doc. 36-6 at 2]. The Guaranty also contained a provision for arbitration like the one included in the Note, and, similarly prohibited the filing of class actions.[2] Okwu executed a "Security Deed" along with the Note and Guaranty, securing the Loan with property located at 4496 Westview Dr.,

---

[1] Quantum-Mac initially executed a promissory note on September 5, 2018. Due to an error, however, Quantum-Mac executed a second promissory note on September 7, 2018 (previously referred to as the "Note"). The Note is the operative legal document.

[2] The arbitration provisions in the Note and the Guaranty are collectively referred to as the "Arbitration Agreements."

Powder Springs, GA 30127. [Doc. 1-2 at 1]. The Loan proceeds were distributed to Quantum-Mac on September 10, 2018.

On September 13, 2018, BofI sold and assigned to World Business Lenders all its rights and interests in the Loan. [Doc. 36-7]. That same day, BofI executed an Allonge, conveying the Note to World Business Lenders. [Doc. 36-9]. Then, later that day, World Business Lenders sold and assigned all its rights and interests in the Loan to WBL and executed an Allonge conveying the Note to WBL. [Docs. 36-10; 36-12]. Consequently, both World Business Lenders and WBL became assignees of the Note and Guaranty.[3]

After Quantum-Mac defaulted on its payment obligations in May of 2019, WBL placed the Loan with Brock & Scott PLLC for foreclosure on the Property, which subsequently occurred on June 2, 2020. Okwu, together with Quantum-Mac, filed a Complaint on June 2, 2020, [Doc. 1], alleging that WBL could not enforce the Note or Security Deed. On July 16, 2020, Defendants sent Plaintiffs a Notice of Intent to Arbitrate the claims on this matter. [Doc. 36-3]. Plaintiffs responded on July 20, 2020, refusing to comply with the arbitration agreement.

The case is now before this Court on Defendants' Motion to Dismiss for Improper Venue and Compel Arbitration. [Doc. 36]. On August 20, 2020, Plaintiffs

---

[3] World Business Lenders and WBL are also assignees of the Security Deed. [Docs 36-13, 36-14].

responded in opposition to the Motion based on a "fraud in the factum" theory. [Doc. 37]. Specifically, they allege that they were unaware of the true nature of the Note, Guaranty, and the respective assignments, such that a usurious loan contract was in fact entered into. [Doc. 37 at 6]. Thus, Plaintiffs contend that this amounts to fraud in the factum. [*Id.* at 8]. In conjunction with their response to Defendants' Arbitration Motion, Plaintiffs filed a Motion requesting leave to conduct additional discovery in order to prove their "fraud in the factum" allegation. [Doc. 38].

## II.  LEGAL STANDARD

Although a party can seek to compel arbitration and a forum-selection clause through multiple avenues, one such avenue is "pursuant to Fed. R. Civ. P. 12(b)(3) as [a] motion[] to dismiss for improper venue." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998); *see* Fed. R. Civ. P. 12(b)(3). In considering a motion to dismiss for improper venue, a court may consider evidence outside the pleadings, such as arbitration agreements. *Thomas v. Rehab. Servs. of Columbus, Inc.*, 45 F. Supp. 2d 1375, 1377 (M.D. Ga. 1999). To enforce an arbitration agreement, a court must find (a) that the party resisting arbitration entered into an arbitration agreement that is enforceable and (b) that the claims fall within the scope of the agreement. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

The Eleventh Circuit has indicated that "a district court's order to arbitrate a contested agreement without the benefit of trial is 'in effect a summary disposition of the issue of whether or not there ha[s] been a meeting of the minds on the agreement to arbitrate.'" *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)). Thus, "'[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'" *Id.* at 785-86 (quoting *Par-Knit Mills*, 636 F.2d at 54). And in making this determination, the district court "'should give to the [party denying the agreement] the benefit of all reasonable doubts and inferences that may arise.'" *Id.*

Limited discovery as to arbitrability is only appropriate when the material facts are disputed, such as when (1) the complaint and supporting documents are unclear regarding an agreement to arbitrate, or (2) the plaintiff has responded to a motion to compel arbitration with "additional facts" sufficient to challenge the agreement to arbitrate." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).

### III.  ANALYSIS

This Court engages in a two-step inquiry to determine whether to grant a motion to compel arbitration. The first step is to determine whether the parties in

fact agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985). That determination is made "by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].'" *Id.* Because arbitration is a matter of contract, however, the Federal Arbitration Act's strong policy in favor of arbitration only applies to disputes that the parties have agreed to arbitrate. In the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (internal citations omitted). The second step involves deciding whether "legal constraints external to the parties' agreement foreclosed arbitration." *Mitsubishi Motors Corp.,* 473 U.S. at 628.

### A. Federal Law Favors Arbitration.

In considering whether to compel arbitration, this Court notes the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Federal Arbitration Act ("FAA") is the "congressional declaration" of that liberal policy and has been enforced since its enactment in 1926. *Id*. The Supreme Court has recognized that "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered," a concern which "requires that we rigorously enforce

agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221 (1985).

Under the FAA, written contracts to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In order to rigorously enforce the agreements, the Court must find that (a) the party resisting arbitration entered into an arbitration agreement that is enforceable and (b) that the claims fall within the scope of the agreement. *See Lambert*, 544 F.3d at 1195. And while an arbitration agreement must be in writing, the parties are not required to have signed it. *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

**B. The Arbitration Agreements are Valid and Enforceable.**

The Eleventh Circuit has repeatedly emphasized that "*state law* generally governs whether an enforceable contract or agreement to arbitrate exists." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal citation omitted). In Georgia, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. The element of assent requires "'(a) a meeting of the minds (b) on the essential terms of the contract.'" *Regan v. Stored Value Cards, Inc.*, 85 F.Supp.3d 1357, 1362 (N.D. Ga. 2015).

Here, Defendants made Plaintiffs an offer to arbitrate. "[A]n 'offer' is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Caley*, 428 F.3d at 1373. Defendants offered Plaintiffs the Arbitration Agreements as a mutual agreement to arbitrate either party's claims against each other in a manner that invited Plaintiffs' assent. The offer was valid.

Plaintiffs also accepted the offer. Okwu signed both the Note (in his business capacity on behalf of Quantum-Mac) and Guaranty (in his personal capacity) and therefore, assented to the Arbitration Agreements within both documents. Okwu's name is printed above his signature, which he signed electronically through the DocuSign program. Both Quantum-Mac and Okwu agree that they signed the Note and Guaranty. [Doc. 20-2, ¶¶ 37, 43]. They argue, however, that the nature of the e-signature could render the assent invalid. But 15 U.S.C. § 7001 (a)(1) and (a)(2) support the conclusion that the agreements were validly entered, by indicating that agreements still have legal force even if electronically signed. 15 U.S.C. § 7001. Thus, by signing the documents in the form that they did, Plaintiffs manifested their acceptance of the offer.

Moreover, there was adequate consideration to support a valid contract. "Under Georgia law, a mutual exchange of promises constitutes adequate consideration." *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1318 (11th Cir. 2005). Here,

both parties promised to arbitrate disputes no matter which party brought the claim. [Docs. 36-5; 36-6]. In addition to the mutual promises made, the proceeds of the Loan were actually distributed to Quantum-Mac. [Doc. 36-7]. Promises were also made by Defendants to reimburse Plaintiffs for filing fees and arbitration fees, further constituting adequate consideration to support the agreement in this case. *See Caley*, 428 F.3d at 1376.

Lastly, the claims asserted in this case fall squarely within the scope of the Arbitration Agreements. The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses,* 460 U.S. at 24–25. Both Arbitration Agreements here broadly apply to "any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document," [Doc. 36-5 at 8], and "any or all disputes and claims arising out of or relating to this Guaranty or any other related document." [Doc. 36-6 at 3].

Plaintiffs assert nine claims against Defendants, all of which are rooted in two contentions and fall within the scope of both Arbitration Agreements. [Doc. 1]. The contentions are that (1) the Loan was usurious and (2) that Okwu never executed a

personal guaranty (in wet ink) with respect to the Loan. Because both claims relate to the Loan and Guaranty, the Arbitration Agreements plainly apply.

Plaintiffs allege, however, that the underlying contract is invalid and therefore the Arbitration Agreements must also be invalidated. But this contention, even if true, would not affect the applicability of the Arbitration Agreements themselves. First, an arbitration agreement is an independent, enforceable contract, even when the larger contract is challenged as invalid. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. '[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'"). Further, the Note contains a severability provision so that any invalid part of the contract does not render the contract wholly invalid. [Doc. 36-5 at 8].

Regardless, Plaintiffs have also failed to establish that the underlying contract is in fact invalid. The contract defense that Plaintiffs assert is a fraud in the factum theory. "Fraud in the factum occurs when a party procures a[nother] party's signature to an instrument without knowledge of its true nature or contents." *Solymar Invs., Ltd. v. Banco Santander, S.A.*, 672 F.3d 981, 994 (11th Cir. 2012). Specifically, it "arises 'when a legal instrument executed differs from the one intended for execution.'" *Id.* Yet, there is no disagreement between the parties

regarding the nature of the Loan documents or the conditions under which Plaintiffs signed the documents. Instead, Plaintiffs knew exactly what kind of documents they were signing and agreeing to and intended it to be that way. And Quantum-Mac even began making payments on the Loan, further constituting its awareness of the terms of the agreement and disproving any defense that Plaintiffs may assert based on misrepresentation. Because Plaintiffs were aware of the nature of the documents entered into, the defense of fraud in the factum is unavailing.

### C. Plaintiffs Are Not Entitled to Additional Discovery.

Additional discovery on a motion to compel arbitration is only appropriate when (1) the complaint and supporting documents are unclear regarding an agreement to arbitrate, or (2) the plaintiff has responded to a motion to compel arbitration with "additional facts" sufficient to challenge the agreement to arbitrate." *Guidotti,* 716 F.3d at 776. "[W]hen there is no genuine issue of material fact concerning the formation of the agreement [to arbitrate]," discovery is inappropriate, as the court may decide as a matter of law on the pleadings, and the documents incorporated therein, whether the parties entered into such an agreement. *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785-86 (11th Cir. 2008) (citation omitted).

Here, none of the facts concerning the Arbitration Agreements are in dispute. Plaintiffs knowingly signed the Note and Guaranty which contained the agreements at issue. Quantum-Mac executed the Note, and Okwu executed the Guaranty, both which contained the express arbitration provisions at issue. *See Honig v. Comcast of Georgia I, LLC*, 537 F. Supp. 2d 1277 (N.D. Ga. 2008) (holding that plaintiff "fail[ed] to demonstrate that this discovery is necessary" because "it is undisputed that she signed the work order and failed to exercise her right to opt out of the arbitration provision"). Thus, Plaintiffs have not proven that additional discovery is warranted.

Additionally, Plaintiffs seek discovery related to BofI's origination of loans, which is about the enforceability of the underlying contracts, not the Arbitration Agreements. [Doc. 38-1, at 9-10]. As discussed above, the arbitration provision is severable, so attacking the underlying loan documents will not help Plaintiffs avoid arbitration. *See Rent-A-Ctr.*, 561 U.S. at 70–71 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). Additional discovery on Plaintiffs' "fraud in the factum" argument also will not be beneficial, as it has already been indicated in various ways that Plaintiffs were aware of the nature and terms of the loan documents they signed. As such, additional discovery now would be inappropriate.

Finally, even if the facts Plaintiffs seek to discover are material, that discovery can be conducted during arbitration. Based on the language of Rule 56(d), a nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion. *See* Fed. R. Civ. P. 56(d). The only "evidence" the Plaintiffs have in support of their Discovery Motion is in the Okwu Declaration, [Doc. 38-2] but that "evidence" only further demonstrates Plaintiffs' understanding of the documents. And, Okwu asserts several legal conclusions about the ultimate issue in this case—claiming he "was never aware that Nevada usury laws were not governing the terms of the loan," and "was never aware that Nevada law did not apply to the Note and Security Deed." [*Id.* ¶¶ 22, 23]. Legal statements, however, never qualify as "evidence." Therefore, Plaintiffs failed to present the evidence necessary to warrant pre-arbitration discovery. *See Bess v. Check Express*, 294 F.3d 1298, 1305 (11th Cir. 2002) (enforcing an arbitration agreement even though the litigant claimed that the terms of the contract were usurious and obtained by fraud).

### D. Plaintiffs Waived the Right to Proceed as a Class.

It is undisputed that Plaintiffs signed the Arbitration Agreements, which included waivers for bringing class action lawsuits. [Doc. 36-5 at 8; Doc. 36-6 at 3]. "A [c]ourt must enforce the parties' arbitration agreement as written, including its clear mandate that the arbitration proceed on an individual basis." *Sanchez v. J.P.*

*Morgan Chase Bank, N.A.*, No. 14-20468-CIV-MORENO, 2014 WL 4063046, at *4 (S.D. Fla. Aug. 15, 2014). Accordingly, the Court finds that Plaintiffs may not proceed as a class.

### E. Dismissal for Improper Venue is Appropriate.

Because this Court has compelled arbitration based on the agreements, the FAA would generally direct the Court to stay the action until the arbitration was completed. *See* 9 U.S.C. § 3. However, "whether the Court stays or dismisses this motion, the effect is the same." *Moses*, 460 U.S. at 28. In this case, a dismissal, as opposed to a stay, is appropriate.

First, all issues in this lawsuit are arbitrable, so there is no need for the Court to stay the action rather than dismiss. Additionally, a dismissal is proper here because the Arbitration Agreements set forth the proper venue for this case. An agreement to arbitrate is properly characterized as "a specialized kind of forum-selection clause that posits…the situs of suit." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). "[M]otions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed. R. Civ. P. 12(b)(3) as motions to dismiss for improper venue." *Lipcon*, 148 F.3d at 1290. Thus, Defendants properly filed the Motion to Dismiss for Improper Venue based on language in the provisions that the parties agreed to. Accordingly, this Court grants Defendants' Motion.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration is **GRANTED**, [Doc. 36], Plaintiffs' purported class claims are **DISMISSED WITH PREJUDICE**, Plaintiffs' individual claims are **DISMISSED WITHOUT PREJUDICE**, and Plaintiffs' Motion Requesting Leave to Conduct Limited Discovery as to Arbitrability is **DENIED.** [Doc. 38].

**IT IS SO ORDERED** this 3rd day of December, 2020.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE